UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CASE NO.: 22-cv-8858

ALEJANDRO CANTO,

    Plaintiff,

vs.

BKCOIN MANAGEMENT, LLC,
CARLOS BETANCOURT, and KEVIN KANG,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Alejandro Canto, by and through his counsel of record, sues Defendants, BKCoin Management, LLC ("BKCoin"), Carlos Betancourt ("Betancourt"), and Kevin Kang ("Kang") (collectively, "Defendants"), and in support thereof states as follows:

### INTRODUCTION

1. In this diversity action, Defendants violated the most exacting loyalties and strictest of confidences to hide massive losses in Plaintiff Alejandro Canto's investment portfolio while illegally raiding that portfolio of millions of dollars. Canto sues Defendants BKCoin and its principals—Defendants Betancourt and Kang—for breaching (or aiding and abetting breaches of) fiduciary duties to Canto.

2. Canto is a young entrepreneur who earned millions of dollars in emerging industries, such as cannabis and, as relevant here, cryptocurrency. Canto retained BKCoin to manage his cryptocurrency investment portfolio. Betancourt and Kang acted as a relationship manager and/or advisers to Canto, directly managing and advising as to Canto's financial affairs

1

with BKCoin. BKCoin and its principals heralded themselves as prodigies as Canto's portfolio grew from a few hundred thousand dollars to in excess of $11 million.

3. But when the crypto markets began to see downturns, BKCoin ceased regularly updating Canto about his investment portfolio. Then, BKCoin began raiding Canto's multi-million portfolio, purportedly for margin calls related to certain loans Canto executed with BKCoin. But Canto never authorized such margin calls, and neither BKCoin nor its principals had the authority to do so under the relevant loan agreements.

4. Instead of prioritizing Canto's financial interests above its own, BKCoin violated its fiduciary duty of loyalty by unilaterally seizing cryptocurrency from Canto's investment portfolio to satisfy its own agenda. BKCoin disregarded the gravity of Canto's suffered injuries as a result of its tortious acts. Canto has suffered millions of dollars in damages for which he seeks to be fully compensated from BKCoin and all who aided and abetted its breaches of fiduciary duty.

**PARTIES**

5. Plaintiff Alejandro Canto is domiciled in, and thus a citizen of, Florida.

6. Defendant BKCoin Management, LLC, is a Delaware limited liability company. BKCoin has two members: Defendants Carlos Betancourt and Kevin Kang.

7. Defendant Carlos Betancourt is domiciled in, and thus a citizen of, California and is a founding principal and co-manager for BKCoin.

8. Defendant Kevin Kang is domiciled in, and thus a citizen of, New York and is a founding principal and co-manager for BKCoin.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees, and Canto is domiciled in, and thus a citizen of, a different state than Defendants.

10. This Court has personal jurisdiction over Defendants BKCoin, Betancourt, and Kang because, among other things detailed below, Defendants' breaches and tortious activities occurred within this District.

11. BKCoin conducts business operations in New York. BKCoin also failed to act in accordance with its fiduciary duties in this District and performed the margin calls at issue in this District. Further, BKCoin consented to the jurisdiction of this Court under the Investment Management Agreements. *See Investment Management Agreements* ¶ 16, attached as **Composite Exhibit A**.

12. Defendant Betancourt regularly conducts business in New York, and his actions or inactions that resulted in harm to Canto occurred in this District.

13. Defendant Kang is domiciled in New York, regularly conducts business in New York, and his actions or inactions that resulted in harm to Canto occurred in this District.

14. Venue is proper in the Southern District of New York because BKCoin agreed to litigate matters in this District pursuant to the Investment Management Agreements. *See* Ex. A. at ¶ 16. Betancourt and Kang are likewise bound by the Investment Management Agreements' forum selection clauses as non-signatories because their conduct is closely related to the contractual relationship between BKCoin and Canto. Venue is also proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this District.

## BACKGROUND

15. BKCoin Capital, LP is a New York-based multi-million-dollar digital asset hedge fund, managing more than $100 million dollars in assets. Defendant BKCoin is an affiliate of BKCoin Capital, which manages and trades digital assets, including cryptocurrency, to deliver returns to investors.

16. Canto has earned millions of dollars as an entrepreneur in emerging industries. One of those industries was the cryptocurrency industry.

### *The Parties Execute Investment Management Agreements for Canto's Cryptocurrency*

17. In 2019, after previous investments in cryptocurrency, Canto engaged with BKCoin to manage his investment portfolio. Canto entrusted his confidence in BKCoin and relied on it to manage his investments.

18. As part of the engagement, Canto executed two Investment Management Agreements with BKCoin, dated March 16, 2020, and December 7, 2020. The Investment Management Agreements were virtually identical to each other. *See* Ex. A.

19. Under the Investment Management Agreements, BKCoin agreed to manage Canto's cryptocurrency assets. *See* Ex. A. at ¶ 1.

20. Thus, a fiduciary relationship arose from the trust and confidence between Canto and BKCoin, where BKCoin owed several fiduciary duties to Canto. BKCoin owed Canto a fiduciary duty to exercise due skill, care, and diligence in handling Canto's investment portfolio.

21. BKCoin had a fiduciary duty to timely communicate with Canto about his investment portfolio and advise him of its status. BKCoin also had a fiduciary duty to provide, at a minimum, quarterly statements to Canto regarding the performance status of his investment

portfolio and to carefully supervise Canto's portfolio under his express authorization. *See* Ex. A. at ¶¶ 2, 10.

22. Under the Investment Management Agreements, BKCoin owed a duty of loyalty and good faith to Canto, which required that it put his financial interests above its own.

23. The Investment Management Agreements specified that BKCoin would manage the following cryptocurrencies for Canto: Bitcoin, Ethereum, XRP (Ripple), and BitTorrent (BTT). *See* Ex. A at Exhibit A (Statement of Client Account Restrictions). BKCoin would later acquire and manage for Canto an additional cryptocurrency called HBAR (Hedera), which was not subject to the Investment Management Agreements.

### *Betancourt's & Kang's Roles with BKCoin*

24. BKCoin is a relatively small company, composed of possibly as few as five, full-time employees. Virtually all of BKCoin's employees are located or work in New York.

25. BKCoin's members and principals—Betancourt and Kang—were involved in its day-to-day activities and made the principal decisions regarding operating the company, managing Canto's investment portfolio, and providing him notice of the status of his holdings with the company.

26. Betancourt was the primary relationship manager for Canto's investment portfolio, serving, among other things, as the primary broker, adviser, and contact for Canto's account.

27. Kang was responsible for monitoring Canto's investment portfolio and providing updates to Canto regarding his holdings and financial affairs at BKCoin.

*The Parties Execute Loan Agreements Related to the Acquisition of Cryptocurrency*

28. In addition to the Investment Management Agreements, Canto executed multiple loan agreements with BKCoin, three of which are relevant here, dated October 7, 2021, November 19, 2021, and March 9, 2022. *See* **Composite Exhibit B**.

29. BKCoin loaned Canto at least $4.05 million under the loan agreements. *See* Ex. B. Under the loan agreements, Canto's investment portfolio with BKCoin served as collateral for the loans.

30. If BKCoin loaned Canto cryptocurrency instead of U.S. dollars, the loan agreements allowed BKCoin to request margin calls for additional collateral from Canto under certain circumstances. BKCoin's loans to Canto, however, were ultimately provided in U.S. dollars, not cryptocurrency. *See* Ex. B at Exhibit B (Loan Term Sheet).

31. Not only were margin calls thus inappropriate because BKCoin did not loan cryptocurrency to Canto, but the loan agreements did not authorize BKCoin to unilaterally seize additional collateral from Canto's investment portfolio.

*Canto's Crypto-Portfolio Achieves Massive Gains Before Breaches*

32. After execution of the Investment Management Agreements and certain of the loan agreements, Canto's portfolio initially earned substantial gains. Canto's cryptocurrency portfolio with BKCoin—excluding his XRP (Ripple) and HBAR (Hedera) coins—eventually reached highs of at least $11.4 million.

33. But, shortly after Canto's portfolio reached its highs, BKCoin committed several breaches of its fiduciary duties in the management of Canto's multi-million-dollar investment portfolio, resulting in millions in losses to Canto.

34. For more than a year after the execution of the initial Investment Management Agreement, BKCoin provided statements to Canto virtually every month that detailed the status and performance of Canto's investment portfolio.

35. However, beginning in July 2021 when his portfolio began to see its first losses, BKCoin stopped providing Canto with monthly reports detailing the status of his investments.

36. On October 26, 2021, after the cryptocurrency market dramatically recovered from Summer 2021 lows, BKCoin provided Canto monthly statements that it had not previously issued Canto through that date.

37. But the cryptocurrency market experienced another significant downturn the weeks following October 26, 2021, and BKCoin once again failed to provide Canto monthly (or any statements) thereafter until June 7, 2022, more than a half a year later. During that time, Canto's investment portfolio suffered significant losses.

38. BKCoin's practices establishes that it provided portfolio updates to Canto only when the market was favorable. For example, BKCoin did not provide Canto statements in July, August, or September 2021 when the market was volatile. But BKCoin provided Canto an update on October 26, 2021, while the market was favorable. Following that update, the market again turbulently fell, and BKCoin failed to timely inform Canto about his portfolio.

39. Canto continually demanded updates regarding his investment portfolio—during this period and earlier—that were never provided, a further breach of fiduciary duty.

40. To date, Canto has yet to receive any portfolio statements reflecting the status of his investments in HBAR or XRP cryptocurrency.

41. When Canto finally received an update in June 2022, BKCoin informed him that his near $12 million-dollar portfolio was under water and that he owed BKCoin $1 million.

Thereafter, BKCoin still has failed to provide Canto updates regarding his investment portfolio, despite repeated requests to BKCoin, its principals, and BKCoin's attorneys.

42. BKCoin's failure to provide timely updates or otherwise communicate with Canto during its management of Canto's portfolio is a breach of the fiduciary duty of care created by the Investment Management Agreements.

43. Had Canto received timely updates from BKCoin regarding his cryptocurrency investments, he would have sold his portfolio at near market highs before he lost nearly all of his investments.

### *BKCoin Improperly Seizes Collateral From Canto's Investment Portfolio*

44. BKCoin also breached its fiduciary duty as investment manager when it conducted improper margin calls on Canto's investment portfolio.

45. The loan agreements, the only contracted modification of the BKCoin's fiduciary obligations, expressly outlined the rights of responsibilities between BKCoin and Canto.

46. The loan agreements expressly permitted margin calls on Canto's investment portfolio only in the event that Canto borrowed cryptocurrency from BKCoin (and then, only under certain conditions). The loan agreements did not authorize margin calls when the loans were made in U.S. dollars as they were here. In no circumstances did the loan agreements authorize BKCoin to unilaterally seize collateral from Canto's investment portfolio.

47. Purporting to act pursuant to the loan agreements, however, BKCoin unilaterally conducted margin calls on Canto's investment portfolio. In other words, BKCoin, without notice to Canto, transferred or seized additional cryptocurrency collateral from Canto's investment portfolio despite neither the loan agreements nor Canto providing BKCoin (or its principals) that authority.

48. BKCoin's improper margin calls breached its fiduciary duties of loyalty, good faith, and care to Canto that it agreed to fulfill as his investment manager.

49. As a result of those breaches, BKCoin (and its principals) improperly raided Canto's investment portfolio of millions of dollars based on the improper margin calls.

50. As of close of market on October 14, 2022, Canto's portfolio is currently worth only $2.9 million, excluding his holdings in HBAR and XRP.

51. Canto is without knowledge as to the current value of his HBAR and XRP coins because Defendants have failed to provide him with this information, despite BKCoin's fiduciary obligations as his investment manager.

52. All conditions precedent to the institution, maintenance, and conclusion of this action, if any, have been performed, waived, or executed.

53. Canto is suing regarding the breaches of fiduciary duty arising from the Investment Management Agreements only. The loan agreements are mentioned here because they formally define the parties' modifications of their legal and other contractual duties.

## COUNT I
## BREACH OF FIDUCIARY DUTY—FAILURE TO DISCLOSE
## (Against BKCoin)

54. Canto re-alleges and incorporates paragraphs 1–53 of this Complaint as though fully set forth herein.

55. Canto engaged BKCoin as his investment manager to oversee and supervise his cryptocurrency portfolio.

56. At all times relevant to this litigation, BKCoin owed Canto several fiduciary duties. BKCoin's fiduciary duties included, but are not limited to, obligations to act prudently in

9

the management of Canto's portfolio, to discharge its actions in loyalty and good faith, to act in Canto's best interests, and to put Canto's interests before its own.

57. BKCoin also owed fiduciary (and contractual) duties to Canto to communicate with him regarding the status of his cryptocurrency portfolio and to disclose material facts related thereto. BKCoin was obligated to exercise the highest degree of skill and care

58. Canto vested his trust and confidence in BKCoin to execute its responsibilities.

59. Initially in their relationship, BKCoin provided Canto statements virtually every month detailing the status of his investment portfolio at BKCoin. Canto earned substantial gains on his portfolio during that time.

60. However, beginning in or about July 2021, BKCoin suddenly ceased providing these monthly statements to Canto as soon as Canto's portfolio began to experience losses. After an update in October 2021, more than half a year passed without BKCoin providing any statements to Canto on the then-present status of Canto's investment portfolio.

61. During the time that BKCoin failed to keep Canto informed, his investment portfolio suffered considerable losses.

62. Nearly a year later, and only after multiple requests by Canto for information on his investment portfolio, did BKCoin inform Canto that his investments were under water by at least $1 million.

63. But for the lack of portfolio statements provided by BKCoin and its breaches of fiduciary duty, Canto would have liquidated his investment portfolio at an advantageous time and would not have suffered those losses.

64. As a result, Canto was unable to sell his investment portfolio when it reached its highs to reap millions of dollars. Now, his once multimillion-dollar portfolio is underwater.

## COUNT II
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY—FAILURE TO DISCLOSE
### (Against Betancourt and Kang)

65. Canto re-alleges and incorporates paragraphs 1–53 and 55–64 of this Complaint as though fully set forth herein.

66. At all times relevant to this litigation, the Investment Management Agreements expressly governed BKCoin's responsibilities. As investment manager of Canto's investment portfolio, BKCoin owed Canto several fiduciary duties. BKCoin's fiduciary duties included, but are not limited to, obligations to act prudently in the management of Canto's portfolio, to discharge its actions in loyalty and good faith, to act in Canto's best interests, and to put Canto's interests before its own.

67. BKCoin agreed to communicate with him regularly regarding the status of and nature of his investment portfolio and to disclose all material information.

68. BKCoin breached that duty when it failed to provide proper disclosures, updates, and/or monthly statements to Canto about the performance status of his investment portfolio.

69. As senior management of BKCoin, Betancourt and Kang were responsible for ensuring that BKCoin executed its fiduciary duties to Canto under the Investment Management Agreements.

70. Instead of enabling BKCoin to carry out its fiduciary responsibilities, Betancourt and Kang knowingly participated in BKCoin's breaches of fiduciary duties to Canto by not providing him the requisite and necessary updates regarding the management of his investment portfolio. Under Betancourt's and Kang's leadership, and as result of their nonfeasance, nearly eight months passed before Canto received any portfolio statements from BKCoin.

71. By the time BKCoin notified Canto of the status of his investment portfolio in June 2022, it claimed that Canto's multi-million-dollar investment portfolio was underwater by at least $1 million.

72. Betancourt and Kang failed—on several occasions—to provide Canto timely statements in accordance with BKCoin's fiduciary duty of care as investment manager of his investment portfolio.

73. But for Betancourt's and Kang's tortious acts, Canto would have liquidated his portfolio at a more advantageous and profitable time such that he would not have suffered millions of dollars in losses. Canto's losses flow directly from the concerted actions of BKCoin and its principals—Betancourt and Kang.

## COUNT III
## BREACH OF FIDUCIARY DUTY—IMPROPER MARGIN CALLS
### (Against BKCoin)

74. Canto re-alleges and incorporates paragraphs 1–53 of this Complaint as though fully set forth herein.

75. As the appointed investment manager of Canto's investment portfolio, BKCoin owed fiduciary duties to Canto to act in the utmost good faith and loyalty. At all times relevant to this litigation, BKCoin owed Canto several fiduciary duties. BKCoin's fiduciary duties included, but are not limited to, obligations to act prudently in the management of Canto's portfolio, to discharge its actions in loyalty and good faith, to act in Canto's best interests, and to put Canto's interests before its own.

76. BKCoin violated its fiduciary duties to Canto by conducting ultra vires acts not permitted under the agreements or otherwise authorized by Canto.

77. The loan agreements permitted margin calls only in specific circumstances, and only in the event where BKCoin provided loans in the form of cryptocurrency to Canto. *See* Ex. B at § IV(b).

78. Here, BKCoin had no right to conduct margin calls under the loan agreements because Canto did not borrow cryptocurrency from BKCoin. Instead, Canto directly borrowed U.S. dollars from BKCoin. In exchange, Canto agreed to BKCoin's use of his cryptocurrency holdings as collateral to satisfy the loans.

79. Without consideration for Canto's financial interests or his prior authorization, BKCoin seized additional collateral—conduct not authorized under the loan agreements.

80. Canto suffered millions of dollars in damages due to BKCoin's violation of its fiduciary duties by unilaterally seizing cryptocurrency from Canto's investment portfolio to cover BKCoin's loans to Canto. Canto did not authorize those seizures, whether orally or through the loan agreements. At most, BKCoin could only request that Canto supply additional collateral.

81. Betancourt informed Canto that several margin calls were conducted on his investment portfolio that ultimately resulted, in part or otherwise, in his multi-million-dollar investment portfolio being depleted and underwater by at least $1 million. BKCoin has refused to provide Canto information regarding the current status of his investment portfolio. BKCoin sold Canto's cryptocurrency or removed them from traditional trades, the latter of which prevent him from reaping investment gains from his portfolio.

82. BKCoin breached its fiduciary duties by taking actions calculated to protect and advance the interests of BKCoin in a manner not authorized by law or any contractual arrangement of the parties. Those breaches resulted in the multi-million-dollar losses in Canto's investment portfolio.

## COUNT IV
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY—
## IMPROPER MARGIN CALLS
## (Against Betancourt and Kang)

83. Canto re-alleges and incorporates paragraphs 1–53 and paragraphs 75–82 of this Complaint as though fully set forth herein.

84. At all times relevant to this litigation, BKCoin owed Canto several fiduciary duties. BKCoin's fiduciary duties included, but are not limited to, obligations to act prudently in the management of Canto's portfolio, to discharge its actions in loyalty and good faith, to act in Canto's best interests, and to put Canto's interests before its own.

85. BKCoin breached its fiduciary duties by conducting improper and unilateral margin calls in which BKCoin removed from trading or otherwise seized and/or sold Canto's cryptocurrency to provide additional collateral for BKCoin's loans to Canto.

86. Betancourt and Kang knowingly participated in BKCoin's improper margin calls by directing, performing, or otherwise authorizing margin calls to protect their company's interests over Canto's interests.

87. Betancourt informed Canto that BKCoin conducted several margin calls on Canto's investment portfolio—without Canto's knowledge or approval—that ultimately resulted in his multi-million investment portfolio being depleted and underwater by at least $1 million.

88. To date, BKCoin has refused to provide Canto information regarding the current status of his investment portfolio. BKCoin sold Canto's cryptocurrency or removed them from traditional trades, the latter of which prevent him from reaping investment gains from his portfolio.

89. BKCoin breached its fiduciary duties by taking actions calculated to protect and advance the interests of BKCoin in a manner not authorized by law or any contractual arrangement

of the parties. The concerted actions of BKCoin, Betancourt, and Kang resulted in the multi-million-dollar losses in Canto's investment portfolio.

**WHEREFORE**, Plaintiff Alejandro Canto requests that this Court enter judgment against Defendants, BKCoin Management, LLC, Carlos Betancourt, and Kevin Kang, for actual, compensatory, and consequential damages, attorneys' fees and costs, pre- and post-judgment interest, and any other relief to which Canto may be entitled.

## JURY TRIAL DEMAND

Plaintiff Canto demands a trial by jury on all claims.

Dated: October 17, 2022

       **Kozak Tropin & Throckmorton LLP**
       *Attorneys for Alejandro Canto*
       2525 Ponce de Leon Blvd., 9th Floor
       Miami, Florida 33134
       Tel.: 305-372-1800
       Fax: 305-372-3508

       By: *Dwayne A. Robinson*
       Dwayne A. Robinson, Esq. (*pro hac vice forthcoming*)
       Fla. Bar No. 0099976
       Email: drobinson@kttlaw.com
       Robert J. Neary, Esq. (*pro hac vice forthcoming*)
       Fla. Bar No. 81712
       Email: rn@kttlaw.com
       Jeffrey J. Leavitt, Esq. (*pro hac vice forthcoming*)
       Fla. Bar No. 1010264
       Email: jleavitt@kttlaw.com
       Amber J. Mannings, Esq. (*pro hac vice forthcoming*)
       Fla. Bar No. 1038566
       Email: amannings@kttlaw.com